FILED
DES MOINES, IOWA

00 MAY -4 AM 8: 44

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ERIN MURPHY and )
JESSICA HARMON, )
) Civil No. 4-00-CV-10010
    Plaintiffs, )
)
vs. )
)
PLEASANTVILLE SCHOOL ) ORDER
DISTRICT, JOHN DANKS, )
DAVE ISGRIG, and RODNEY )
CHAMBERLAIN, )
)
    Defendants. )

Before the Court is a motion to dismiss, filed February 4, 2000 by three of the four defendants in this case – Pleasantville School District, Dave Isgrig and Rodney Chamberlain. Plaintiffs Erin Murphy and Jessica Harmon filed a resistance to defendants' motion on March 1, 2000. The moving defendants then filed their reply brief on March 8, 2000. Although oral argument was requested, the Court finds it unnecessary and the matter is considered fully submitted.

I.    BACKGROUND

For the purposes of this motion, the following facts either are not in dispute or are accepted as alleged in plaintiffs' amended complaint. John Danks, defendant, has been a long time teacher and coach for Pleasantville High School. Danks coached the school's varsity football and boys basketball teams. During the 1998-99 school year, plaintiffs Erin Murphy and Jessica Harmon were seniors at Pleasantville High School and served as statisticians for both



teams which Danks coached.  Danks supervised the plaintiffs in this extra-curricular activity.

Danks gave plaintiffs benefits for their work as statisticians, such as passes to excuse absences

from or tardiness to classes, along with free admission to high school sporting events.

Beginning in the late fall of 1998 and into the early winter of 1999, plaintiffs allege

Danks behaved offensively and inappropriately.  On more than one occasion Danks: hugged

plaintiffs and kissed them on the cheek; held plaintiffs' hands; rubbed plaintiffs' legs and inner

thighs; called plaintiffs at their respective homes; and requested plaintiffs not tell anyone about

the hugs and kisses he gave them.  Murphy alleges Danks tried to kiss her on the lips, told her

she should be a "calendar girl" in a "sexy little bikini," told her she should be a call girl and that

he wanted to be first in line, he asked for her telephone number, tickled her and ran his hands up

and down the sides of her body, and said he "really, really liked her."  Harmon alleges Danks

asked her to meet him alone at his office on a Saturday morning, showed up at her home when

he knew her parents would not be there, and went to her place of employment three times in one

day.

Plaintiffs eventually shared their problems concerning Danks' behavior with their

parents.  The parents then went to the Pleasantville School District, specifically to Dave Isgrig,

superintendent of the School District, and Rodney Chamberlain, secondary principal of the

School District, and complained of Danks' behavior.  Plaintiffs allege that Isgrig and

Chamberlain promised that Danks would have no further contact with plaintiffs, but that they did

not follow through with this promise.  On February 17, 1999, a meeting was held with plaintiffs,

their parents, Isgrig, Chamberlain and Danks.  In this meeting, Danks stated he would "never

give up a thirty-year career in teaching over this."

Two days later, on February 19, plaintiffs and their parents filed a formal written
complaint of sexual harassment with Pleasantville School District.  The school district
investigated the complaint and issued a report on April 5, 1999.  The report concluded that
Danks behaved inappropriately but not in such a way as to constitute sexual harassment.
However, as a result of a later complaint against Danks, the Iowa Board of Educational
Examiners found Danks sexually harassed plaintiffs and disciplined him for his conduct.

Plaintiffs report that they were ostracized by employees and administrators of the school
district because they complained of Danks' behavior.  On March 30, 1999 plaintiffs filed charges
of education discrimination against defendants with the Iowa Civil Rights Commission.  The
Commission issued an administrative release regarding these charges on October 18, 1999.
Plaintiffs originally filed their complaint before this Court on January 7, 2000 and later filed an
amended complaint on March 17, 2000.[1]

Plaintiffs bring five causes of action in their complaint: first, a claim of education
discrimination, harassment, and retaliation against Pleasantville School District under Title IX;
second, a claim of education discrimination, harassment, and retaliation against all four
defendants under Iowa Code Chapter 216; third, a claim that all four defendants violated 42
U.S.C. § 1983 by having an official policy, practice, procedure or custom of treating female
students differently in violation of the Equal Protection Clause; fourth, a claim of assault and
battery against Danks, and under a theory of repondeat superior against Pleasantville School

---

[1] Plaintiffs' amended complaint only altered how plaintiffs alleged their complaints
against the individual defendants.  In the amended complaint, plaintiffs brought suit against
Danks, Isgrig and Chamberlain in both their individual and official capacities.  This allowed
amendment negates defendants' arguments that the section 1983 claim, count III of plaintiffs'
complaint, should be dismissed against Isgrig and Chamberlain.

District; and finally, a claim against Isgrig, Chamberlain and the School District for negligence in hiring, supervising, and retaining Danks as an employee.[2]

The moving defendants ("defendants") seek to be dismissed from parts of the complaint. Isgrig and Chamberlain argue that they should be dismissed from counts II, III and V as a matter of law. The School District asks this Court to dismiss it from counts IV and V, and argues that all claims for punitive damages against it be dismissed.

II      APPLICABLE LAW & DISCUSSION

A.      Standard of Review

When considering a motion to dismiss, a court will accept as true all factual allegations in the complaint. *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740 (8th Cir. 1996) (citing *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163-65 (1993)). A motion to dismiss will be granted "only if no set of facts would entitle the plaintiff to relief.'" *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957)).

B.      Individual Liability for Discrimination in Education under Iowa Law

In their motion to dismiss, moving defendants argue Isgrig and Chamberlain should be dismissed from the second count of plaintiff's complaint, which alleges that defendants committed and are liable for harassment, discrimination, and retaliation against plaintiffs in violation of the Iowa Civil Rights Act ("ICRA"). *See* IOWA CODE chapter 216, and § 216.9 (specifically addressing unfair or discriminatory practices in education). Plaintiffs brought this claimed violation of the Act against all four defendants.

---

[2] Plaintiffs generally allege negligence against "Defendants, jointly and severally." *See* Amended Complaint, at 13.

The ICRA prohibits unfair or discriminatory practices in education and states that it is "unfair for any *educational institution* to discriminate on the basis of race, creed, color, sex, national origin, religion, or disability in any program or activity." IOWA CODE § 216.9. An educational institution is defined to include "any pre-school, elementary, secondary, or community college, area education agency or postsecondary college or university and their governing boards." *Id.*

Plaintiffs admit that Isgrig and Chamberlain, as individual defendants, are not educational institutions. However, on two grounds, plaintiffs argue the individual defendants may still be held liable for discrimination, harassment or retaliation in education under Iowa Code chapter 216. Plaintiffs argue Iowa Code section 216.11 extends liability to any person who aids, abets, compels or coerces another to engage in the prohibited practices; and that the rationale of *Vivian v. Madison*, 601 N.W.2d 872 (Iowa 1999), necessitates that individual defendants be subject to liability for educational discrimination. For purposes of the question currently before this Court – whether Chamberlain and Isgrig are subject to liability for discrimination in education – this Court finds its guidance in the *Vivian* case.

In *Vivian*, the Iowa Supreme Court, in answering a certified question of state law presented to it by this Court, held that under Iowa Code section 216.6 prohibiting discriminatory practices in employment, an individual supervisor can be subjected to individual liability. *Id.* at 878. That section of the ICRA uses the word "person," along with employer and labor organization, when describing who or what is prohibited from discrimination or unfair practices in the work places, and the Iowa court noted that this was different from Title VII – the law upon which the ICRA was modeled.[3] *Id.* at 873. The Iowa court identified two other differences

---

[3] The *Vivian* court stated that since the ICRA was modeled on Title VII, Iowa courts

5

between the ICRA and Title VII.  Those were the provision in the Iowa Code prohibiting the

aiding or abetting of discriminatory practices, Iowa Code section 216.11, and also the broader

remedies available under the ICRA.  *Id.*  The *Vivian* court, at the outset of its opinion,

recognized the unique characteristics of the ICRA in general.

The rationale of the *Vivian* court, though, was very specific to the employment context

and even more specifically tied in with Iowa Code section 216.6 and the language which the

Iowa legislature choose to use.  The Court found that the Iowa legislature indicated its clear

intent in section 216.6(1) "to hold a 'person' subject to liability separately and apart from the

liability imposed on an 'employer.'"  The *Vivian* court did not rely on the presence of a

prohibition against aiding or abetting in section 216.11, or upon the broader remedies available

to a plaintiff in the ICRA, to find that individuals can always be liable in any context.  Rather,

the *Vivian* court's holding was limited to its interpretation of section 216.6 and who could be

held liable for discrimination in the employment context under Iowa law.  This Court finds it

inappropriate to extend *Vivian*'s holding to the educational realm, as the Iowa legislature did not

use the word "person" in section 216.9.[4]  The underpinnings for subjecting individual

supervisors to liability under the ICRA for how they deal with their employees are simply not

---

"traditionally turn to federal law for guidance in evaluating the ICRA" but that it "is not
controlling."  *Vivian*, 601 N.W.2d at 873 (citation omitted).

[4] Furthermore, this Court agrees with the defendants' statements and legal authority cited
in their reply brief concerning the plaintiffs' contention that Isgrig and Chamberlain are subject
to individual liability on the basis of aiding or abetting the Pleasantville School District.  *See*
Defendants' Reply Brief in Support of Motion to Dismiss, at 3.  If section 216.11 were read to
allow Isgrig and Chamberlain to be sued for aiding and abetting the same discriminatory acts and
practices that were already prohibited under section 216.9, it would be an absurd result.  The
school can only act through its employees and representatives, and thus to allow plaintiff to
allege that Isgrig and Chamberlain both committed the discriminatory acts, and aided and
abetted these same acts, is not conceptually reconcilable.

present when looking at how the ICRA regulates education and school officials.  The Court will

dismiss count II against defendants Isgrig and Chamberlain as they are not subject to individual

liability under the ICRA for alleged discrimination in education.

      C.     Liability of Pleasantville School District Under the Theory of Respondeat
              Superior for Acts of Danks

      The fourth count of plaintiffs' complaint alleges Pleasantville School District can be held

liable, under the theory of respondeat superior, for the alleged assault and battery committed by

Danks, its employee.  Under Iowa law, in order to succeed on their claim against the School

District, plaintiffs must establish the challenged acts by Danks were committed within the scope

of his employment.  *Godar*, 588 N.W.2d at 701, 707 (Iowa 1999); *Doe v. Hartz*, 52 F. Supp. 2d

1027, 1075 (N.D. Iowa 1999).[5]  Furthermore, although whether an act is committed in the scope

of employment generally is a fact issue, "'the question as to whether the act which departs

markedly from the employer's business is still within the scope of employment may well be for

the court.'" *Godar*, 588 N.W.2d at 706 (quoting *Sandman v. Hagan*, 154 N.W.2d 113, 118 Iowa

1967)).

      In *Godar*, the Iowa Supreme Court had no trouble finding as a matter of law that sexual

abuse of a student by a curriculum director for the school was "conduct so far removed from [the

director's] authorized duties" that the issue as to whether the abuse was committed in the scope

---

     [5] In plaintiffs' resistance brief to the current motion by defendants, they argue the School
District may be liable under respondeat superior even if Danks acted outside the scope of his
employment.  *See* Plaintiff's Brief in Resistance to Defendant's Motion to Dismiss, at 9-11.  As
authority for this proposition, plaintiffs cite Restatement (Second) of Torts section 317 along
with case law from Illinois, Ohio, and Oregon.  This Court rejects plaintiffs' argument that,
under Iowa law, an employer should be held responsible for the acts of its employees under
respondeat superior principles if the employee is found to have acted outside the scope of his or
her employment.

of employment was appropriately determined by the district court. *Id.* at 707. The Iowa Court

went so far as to state: "We do not believe that sexual abuse by a teacher is a 'normal' risk

associated with the objectives of educating students that it should be a risk that should be borne

by the school district." *Id.* However, the *Godar* court also recognized the following factors to

be utilized in determining whether an employee's conduct should be characterized "as occurring

within the scope of the employee's employment" for purposes of employer liability under

respondeat superior:

> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between the master and the servant;
> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether or not the act is outside the enterprise of the master, or, if within the enterprise, has not been entrusted to any servant;
> *(f) whether or not the master has reason to expect that such an act will be done*;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (i) the extent of the departure from the normal method of accomplishing an authorized result; and
> (a) whether or not the act is seriously criminal.

*Id.* at 706 (citing RESTATEMENT (SECOND) OF AGENCY 229(2)) (emphasis added). Impliedly

referencing the above noted factor (f), the *Godar* court found that in that case "[t]here simply

was no evidence to show that [the employee's] alleged conduct was expected, foreseeable, or

sanctioned by the school district." *Godar*, 588 N.W.2d at 707.[6] Thus, the fact that the

employee's actions were not known to the school district, and that those actions were not

---

[6] In *Godar,* the Iowa Supreme Court was reviewing the decision of a trial court granting the defendant's motion for directed verdict following a trial and the plaintiff's presentation of evidence.

foreseeable, weighed into the Iowa Supreme Court's conclusion that the school district could not be liable under a theory of respondeat superior in that case.

In *Doe v. Hartz*, 52 F.Supp.2d 1027 (N.D.Iowa 1999), the court explored *Godar* and its refusal to hold the school district liable under a theory of respondeat superior. The plaintiff in *Hartz* was a church parishioner who sued a priest, the church and some of the church's officials after the priest allegedly sexually abused the parishioner. The plaintiff alleged the church was responsible for the sexual abuse committed by the priest on a theory of respondeat superior. The federal district court explored Iowa law of respondeat superior, and in particular *Godar*, and emphasized that in *Godar* the Iowa Supreme Court found there was no evidence showing the employee's actions were foreseeable to the school district. *Id.* at 1076-77. The *Hartz* court then distinguished its case from *Godar*, as the plaintiff alleged that the church knew or should have known of past misconduct of the priest which would have made sexual abuse by the priest a foreseeable event to the church. *Id.* at 1077. The *Hartz* court then, "with considerable reservations," denied the church's motion to dismiss the claim of the plaintiff to hold the church responsible for the acts of the priest under respondeat superior. The court even went so far as to state that it was a "remarkably tenuous basis for imposing *respondeat superior* liability," but that it was enough to defeat a motion to dismiss.

This case is similar to *Hartz*. Plaintiffs state in their brief in resistance to this motion by defendants that they are "prepared to prove that Danks' past behavior was known to school administrators, as well as the Pleasantville School Board, who had received complaints and warnings from former victims who were molested by Danks, and who did absolutely nothing in response to such complaints and warnings." *See* Plaintiffs' Brief in Resistance to Defendants'

9

Motion to Dismiss, at 6. Also in plaintiffs' amended complaint, plaintiffs allege "individuals at Pleasantville School District knew that John Danks was sexually harassing and molesting female students" and that the School district "failed to respond adequately to Danks' long-standing behavior." *See* Amended Complaint, at ¶¶ 41-42. Plaintiffs' allegations that the activities of Danks were foreseeable to the school district are sufficient to survive defendants' motion to dismiss Count IV of the complaint against the School District – albeit the Court so rules with reservations similar to those expressed in *Hartz*.

      D.     Discretionary Function Immunity

The fifth count of plaintiffs' complaint alleges defendants negligently hired, retained, and supervised Danks. Defendants counter that they are immune from such liability as the decisions regarding the hiring, retention and supervision of Danks fall within the discretionary function exception of Iowa Code Chapter 670 outlining governmental tort liability.

This statutory provision covers municipalities, which are defined to include school districts. *See* IOWA CODE § 670.1(2). It states that "[e]xcept as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties . . . ." *See* IOWA CODE § 670.2. The discretionary function exception to a municipality's immunity is stated as follows:

> *The liability imposed by section 670.2 shall have no application to any claim enumerated in this section.* As to any such claim, a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute dealing with such claims, the municipality shall be immune from liability.
>
> . . . .
>
> 3.    *Any claim based upon* an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute,

10

> ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon *the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.*

IOWA CODE § 670.4. If the School District is immune under the discretionary function exception, then Isgrig and Chamberlain as officers and employees are also immune. *See* IOWA CODE § 670.12.

The issue before this Court then is whether the hiring, retention and supervision of Danks by the School District, through its officers and employees, falls behind the shield provided by discretionary function immunity as laid out in section 670.4(3). Earlier law in Iowa dictated that whether an act fell within the discretionary function exception was determined by if the act could be categorized as a planning or operational act. If it was a planning act, it fell within the exception. *See, e.g., Butler v. State*, 336 N.W.2d 416, 419 (Iowa 1983). However, the Iowa Supreme Court in *Goodman v. City of LeClaire*, 587 N.W.2d 232 (Iowa 1998), adopted the two-part analysis developed by the United States Supreme Court ten years earlier in *Berkovitz v. United States,* 486 U.S. 531 (1988), and declined to follow the planning/operational dichotomy. Under *Goodman* and *Berkovitz,* this Court must first determine whether the conduct at issue "is a matter of choice for the acting employee." *Goodman*, 587 N.W.2d at 237 (citing *Berkovitz*, 486 U.S. at 536). If the employee acting does not have a choice, as their behavior is dictated by a statute, regulation or policy, then the discretionary function exception cannot provide protection. Second, this Court must determine whether the conduct involving an element of judgment "is of the kind that the discretionary function exception was designed to shield." *Id.* (citing *Berkovitz*, 486 U.S. at 536-7). Essentially, the *Berkovitz* Court reasoned that this second prong ensured that

11

only "governmental actions and decisions based on considerations of public policy" received protection. *Id.*

This Court finds the first prong met, as the decisions to hire Danks, retain him, and how to supervise him were matters of judgment. The second prong is more complicated. There is not an Iowa Supreme Court case directly addressing whether hiring, retention and supervision decisions are a matter of judgment and the type of acts the exception was designed to shield. *Goodman* addressed whether a city's alleged negligent excavation activities were protected by the discretionary function exception.

However, *Goodman* does make clear that when interpreting Iowa Code chapter 670, the Iowa Supreme Court gives "great weight to relevant federal decisions interpreting the federal act [the Federal Tort Claims Act ("FTCA")]." *Id.* at 236 (citing *Feltes v. State*, 385 N.W.2d 544, 547 (Iowa 1986)). The Eighth Circuit, interpreting the FTCA, has stated that "[i]ssues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the dicretionary function exception." *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) (citing *K.W. Thompson Tool Co. v. United States*, 836 F.2d 721 (1st Cir. 1988) (involving suit by citizens who had their mail stolen from them by postal workers). The *Tonelli* court also made clear that the decision to hire an employee is "of the 'nature and quality that Congress intended to shield from tort liability.'" *Id.* (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813 (1984)).

The federal district court in *Tonelli* had granted the defendant's motion for summary judgment on the negligence in hiring, retention and supervision because of the discretionary immunity exception. The appellate panel, however, reversed the district court

12

concerning the decisions to retain and supervise, as there were "allegations that the post office [employer] failed to act when it had notice of illegal behavior" and thus "the unresolved notice issue renders summary judgment inappropriate on the employee supervision and retention claims." *Tonelli*, 60 F.3d at 496. The panel upheld the district court's grant of summary judgment concerning the hiring, as that "would require this court to engage in the type of judicial second guessing that Congress intended to avoid." *Id.*

This case is like *Tonelli* in that plaintiff has made allegations that the School District, along with Isgrig and Chamberlain, failed to act after it had notice of the behaviors and actions of Danks. Plaintiffs allege defendants had received complaints and warning from former victims who were molested by Danks. Defendants' motion to dismiss concerning the negligence in retention and supervision will be denied, while defendants' motion as to negligence in hiring will be granted.

E.     Punitive Damages

The School District moved to have all claims for punitive damages dismissed against it. Plaintiff did not resist this motion in its brief. The Court will grant the motion. *See City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247 (1981) (holding that punitive damages are not recoverable against a municipality in a section 1983 suit); *Morlock v. West Cent. Educ. Dist.*, 46 F.Supp.2d 892, 923-24 (D.Minn. 1999) (extending *Newport* analysis to Title IX claims against school districts); and IOWA CODE 670.4(5).

III.    CONCLUSION

For the above stated reasons, defendants' motion to dismiss is **granted in part** and

**denied in part.**  Defendants Isgrig and Chamberlain are dismissed from Count II; the School

District, Isgrig and Chamberlain are dismissed from the claim of negligence in hiring in Count

V; and the School District is dismissed from any request for punitive damages.  The motion to

dismiss Isgrig and Chamberlain from Count III is denied, as is the motion to dismiss the School

District from Count IV.  The motion of the School District, Isgrig and Chamberlain respecting

the claims of negligence in retention and supervision in Count V is also denied.


IT IS SO ORDERED.

Dated this __4__ day of May, 2000.

RONALD E. LONGSTAFF, JUDGE
UNITED STATES DISTRICT COURT